**UNITED STATES of America, Plaintiff,**

v.

**Santiago GAMEZ–OSUA and Jaime Covarrubias Bejarano, Defendants.**

**Crim. No. 90–377–FR.**

United States District Court, D. Oregon.

July 10, 1991.

Charles H. Turner, U.S. Atty., Jennifer J. Martin, Sp. Asst. U.S. Atty., Portland, Or., for plaintiff U.S.

Constance Crooker, Portland, Or., for defendant Jaime Covarrubias Bejarano.

OPINION

FRYE, District Judge:

The following motions are pending:

1) Defendant Jaime Covarrubias Bejarano's motion to suppress statements;

2) Bejarano's motion to suppress cocaine, money, scales, paraphernalia, and other evidence;

3) Bejarano's motion to suppress scrapings seized from secret compartment in vehicle;

4) Bejarano's motion to suppress money and cocaine seized in search of vehicle and Bejarano;

5) Bejarano's motion to suppress cocaine seized from vehicle on December 4, 1990;

6) Bejarano's motion to suppress evidence seized on December 3, 1990;

7) Bejarano's motion in limine; and

8) Bejarano's supplemental motion to suppress statements.

## FACTS

In the early part of November, 1990, Officers Dirk Anderson and William Gray of the City of Portland learned that Jaime Covarrubias Bejarano had 20 ounces of heroin to sell; that Bejarano intended to return to the State of California later in the month of November to obtain 10 to 15 kilograms of cocaine to sell in the City of Portland; that these 10 to 15 kilograms of cocaine were to be "fronted" to Bejarano who was to return to the State of California to pay his supplier for the cocaine after it was sold.

At this time, Officers Anderson and Gray knew that Bejarano drove a silver colored Buick automobile with California license plates and was in the business of selling heroin with a man named Santiago Gamez–Osua.[1] Thereafter, he failed to contact Anderson and Gray as he had been directed.

In the latter part of the month of November, 1990, Officers Anderson and Gray learned that Bejarano and Gamez–Osua were selling narcotics from a residence located at 1504 N.E. 72nd Avenue. On at least one occasion, they saw both Bejarano and Gamez–Osua in a 1983 red Mercury Cougar automobile engaging in what appeared to be a drug transaction with another person.

On December 3, 1990, Officers Anderson and Gray saw Bejarano and Gamez–Osua move the red Mercury Cougar automobile to a concealed area in a garage near 1504 N.E. 72nd Avenue. They knew from information provided to them in their investigation that Bejarano was planning to return to the State of California that evening.

Officers Anderson and Gray observed Bejarano and Gamez–Osua make a number of trips to the residence at 1504 N.E. 72nd Avenue, return to the vehicle with packages in their hands, and conceal the packages behind the rear seat of the automobile.

After Bejarano and Gamez–Osua had concealed all of the packages behind the rear seat of the automobile, Bejarano drove the vehicle away. The officers followed the vehicle to Highway I–205, where Bejarano turned south toward the interstate highway. The officers, believing that Bejarano was driving to the State of California with the proceeds of the sale of cocaine, signaled to him to stop the vehicle.

After he stopped the vehicle, Bejarano spoke to Officer Anderson in broken but intelligible English. Bejarano followed the direction of the officers to exit the vehicle and to produce his drivers license. The name and address of the person on the drivers license that Bejarano produced matched the name and address of the person whom Gamez–Osua had told the officers was a large scale heroin and cocaine dealer.

Officer Gray asked Bejarano for his consent to search the vehicle for drugs or money. Bejarano indicated that he understood the request of Officer Gray to search his vehicle, and he gave his permission to do so. He also gestured with his hand toward the inside of the vehicle.

Upon searching the vehicle, Officer Anderson found fourteen packages of United States currency, in the total sum of $79,150.00, behind the rear seat of the vehicle. Each package was wrapped first in tin foil, and then in plastic tape. Officer Gray, who speaks some Spanish, displayed a Spanish language statement of the Miranda rights to Bejarano as well as advising him of his Miranda rights in Spanish. Bejarano acknowledged understanding his Miranda rights and thereafter made a number of incriminating statements to Officers Anderson and Gray.

---

1. Gamez–Osua provided much of this information to the officers at a time when he indicated that he wanted to be an informant.

The officers then transported Bejarano to the Drug and Vice Division of the Portland Police Department. Officers Anderson and Gray called upon Officer Leo Painton, who is fluent in Spanish, to assist in the interview. Officer Painton again advised Bejarano of his Miranda rights. Bejarano again acknowledged understanding his Miranda rights. Bejarano then made further statements to the officers.

The officers seized the red Cougar automobile and placed it in temporary storage. The following day, as Officer James Powell was moving the vehicle into long-term storage, he pulled down the visor to block the glare of the sun. As he did so, he touched a paper behind the back of the visor. Upon removing the paper, he observed a dollar bill folded in a manner consistent with the packaging of cocaine. Upon analysis, the substance in the dollar bill was determined to be cocaine.

After the arrest of Bejarano, Officer Anderson applied for and received by telephone a warrant to search the premises at 1504 N.E. 72nd Avenue and to search the person of Gamez–Osua. At this time, Officer Anderson learned that there was an outstanding warrant for the arrest of Gamez–Osua issued by the State of Oregon. At approximately 4:35 a.m. on December 4, 1990, officers executed the search warrant and arrested four individuals, including Gamez–Osua. During the execution of the search warrant, officers seized currency, cocaine, and other items related to drug dealing.

Officer Gray advised Gamez–Osua of his Miranda rights orally in English and displayed to Gamez–Osua a card containing Miranda rights written in Spanish. Gamez–Osua indicated that he understood his Miranda rights. Gamez–Osua spoke with the officers at the residence and later at the police department. Officer Painton, the Spanish-speaking officer, assisted in the interview of Gamez–Osua at the police department. Gamez–Osua made a number of statements, including telling the officers that the silver Buick which he said belonged to Bejarano had a switch near the dashboard which was used to operate a secret compartment. The officers obtained a federal search warrant and found a white substance in the secret compartment. The white substance in the secret compartment tested positive for the illegal drug methamphetamine.

## MOTIONS

### 1. Bejarano's Motion to Suppress Statements

Bejarano moves the court to suppress the statements that he made to the police on the grounds that he was not adequately advised of his Miranda rights in Spanish, his native language, and as a result, he did not knowingly and voluntarily waive his right to remain silent and his right to the assistance of counsel.

The court finds, however, that Bejarano was adequately advised of his Miranda rights; that he understood those rights; and that he knowingly waived those rights.

Bejarano further moves the court to suppress the statements that he made on the grounds that Officer Painton failed to translate verbatim in the subsequent interview and acted as another investigator rather than a translator. The court finds no merit in this argument.

Bejarano's motion to suppress statements is denied.

### 2. Bejarano's Motion to Suppress Cocaine, Money, Scales, Paraphernalia and Other Evidence

The government contends that Bejarano has no standing to challenge the search of the residence at 1504 N.E. 72nd Avenue, where the items that he seeks to suppress were located, because he told officers that his residence was in the State of California; that he has never claimed any relationship with the residence except that he stayed at the residence while visiting; and that he was not staying at the residence at the time of his arrest. Bejarano asserts that he has standing to challenge the search of the residence because he was a guest with permission to be on the premises at the time of the search.

The court finds that Bejarano was not present on the premises at the time of the search and had no reasonable expectation of privacy in any of the property on the premises. The court concludes that there are no facts from which it could conclude that Bejarano has standing to contest the search of the residence at 1504 N.E. 72nd Avenue which was conducted pursuant to a search warrant.

Bejarano's motion to suppress cocaine, money, scales, paraphernalia and other evidence is denied.

### 3. Bejarano's Motion to Suppress Scrapings Seized From Secret Compartment in Vehicle

Bejarano contends that the scrapings obtained from a search of the secret compartment in the red Cougar automobile pursuant to a search warrant should be suppressed on the grounds that the seizure of the vehicle was not based upon probable cause, and the search was made pursuant to a search warrant which contained illegally obtained admissions.

The court finds that the search warrant was legally obtained and lawfully executed. Bejarano's motion to suppress scrapings seized from secret compartment in vehicle is denied.

### 4. Bejarano's Motion to Suppress Money and Cocaine Seized in Search of Vehicle and Bejarano

Bejarano contends that the officers had no probable cause to stop his vehicle on December 3, 1990.

The court finds, however, that the officers who stopped the red Mercury Cougar automobile that Bejarano was driving had probable cause to believe that there was evidence of a crime in the vehicle. The search of the vehicle after it was stopped was valid under the automobile exception to the requirement for a search warrant. Furthermore, the search was valid because Bejarano knowingly consented to the search of the vehicle.

The objections of Bejarano to the searches of the residence and the silver Buick automobile are denied. Bejarano's motion to suppress money and cocaine seized in the searches of the vehicle and of Bejarano is denied.

### 5. Bejarano's Motion to Suppress Cocaine Seized from Vehicle on December 4, 1990

Bejarano moves the court to suppress the evidence seized from the visor of the car by Officer James Powell, the officer who transported the car to long-term storage on December 4, 1991. Bejarano contends that the search and the seizure of the automobile was without a warrant, without probable cause, and made in the absence of exigent circumstances and not as a part of an inventory search.

The government argues that the actions of Officer Powell were reasonable and lawful as part of a process of transporting the vehicle and taking inventory of its contents.

The court finds that the actions of Officer Powell in transporting the vehicle and in checking the visor were reasonable and lawful. There are no grounds upon which to suppress this evidence.

Bejarano's motion to suppress cocaine seized from vehicle on December 4, 1990 is denied.

### 6. Bejarano's Motion to Suppress Evidence Seized on December 3, 1990

Bejarano moves the court for an order suppressing all of the evidence obtained from his vehicle after it was stopped on December 3, 1990 on the same grounds as those in the motion to suppress money and cocaine seized in the search of vehicle and Bejarano.

The court adheres to its prior ruling that the detention of the automobile and its subsequent search were lawful. Bejarano's motion to suppress evidence seized on December 3, 1990 is denied.

### 7. Bejarano's Motion in Limine

Bejarano moves the court to limit evidence at trial of 1) statements made by Gamez–Osua; 2) his admission that he is an

illegal alien; and 3) evidence that a drug-sniffing dog "hit on" the money that was in the car he was driving.

This motion in limine is denied at this time with leave to renew at the time of trial.

### 8. *Bejarano's Supplemental Motion to Suppress Statements*

Bejarano moves the court once again to suppress the same statements moved against in the prior motion for the reason that they were obtained from him after an unlawful stop and an unlawful search of his vehicle, and on the grounds that the statements were not voluntary. The court has concluded that the stop was lawful, and the statements were knowingly and voluntarily made.

Bejarano's supplemental motion to suppress statements is denied.

### CONCLUSION

1) Bejarano's motion to suppress statements is denied.

2) Bejarano's motion to suppress cocaine, money, scales, paraphernalia, and other evidence is denied.

3) Bejarano's motion to suppress scrapings seized from secret compartment in vehicle is denied.

4) Bejarano's motion to suppress money and cocaine seized in search of vehicle and Bejarano is denied.

5) Bejarano's motion to suppress cocaine seized from vehicle on December 4, 1990 is denied.

6) Bejarano's motion to suppress evidence seized on December 3, 1990 is denied.

7) Bejarano's motion in limine is denied.

8) Bejarano's supplemental motion to suppress statements is denied.